UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | |
|---|---|
| BELLSOUTH   TELECOMMUNICATIONS, INC., | ) ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:05-CV-16-JMH |
| | ) |
| v. | ) |
| | ) |
| CINERGY COMMUNICATIONS CO., a/k/a CINERGY COMMUNICATIONS, CORP., ET AL. | ) **MEMORANDUM OPINION AND ORDER** ) ) |
| | ) |
| Defendants. | ) ) |

** ** ** ** ** ** ** ** ** **

This matter is before the Court on Plaintiff's motion for a preliminary injunction [Record No. 2]. Having reviewed the motion, responses, reply, and voluminous record, and having heard oral argument on the matter on April 18, 2005, the Court finds that a preliminary injunction is warranted.

## I. Factual and Procedural Background

The Telecommunications Act ("the Act") places a duty on incumbent local exchange carriers ("ILECs"), like the plaintiff BellSouth Telecommunications, Inc. ("BellSouth"), that have traditionally provided local telephone services to an area, to lease unbundled network elements ("UNE") on a cost basis to new entrants into the market, called competitive local exchange carriers ("CLECs"). 47 U.S.C. § 251. The Act authorizes the Federal Communications Commission ("FCC" or "the Commission") to determine the network elements and the proper candidates for this

low rate of services.  A "network element" is defined as "a facility or equipment used in the provision of a telecommunications services." *Id*.  The unbundled network elements platform ("UNE-P") is composed of switching functions, shared transport, and loops. The only network element at issue in the preliminary injunction is switching.

The Act states that the FCC should consider "at a minimum, whether ... access to such network elements as are proprietary in nature is necessary; and ... [whether] the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer."  *Id*.

In the late 1990s, the FCC imposed blanket unbundling, which is requiring ILECs to make available as UNEs, *all* or a certain listed number of the piece parts of their local networks in certain geographic areas.  The Supreme Court invalidated this practice in *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999), because the FCC had not properly considered whether unbundling was necessary or whether the CLECs were impaired.  *Id*. at 388-92.

In response, the FCC ruled that impairment was shown if without unbundling, the CLEC's ability to provide services was materially diminished.  *United States Telecom Ass'n v. FCC*, 290 F.3d 415, 419 (D.C. Cir. 2002) ("*USTA I*").  The D.C. Circuit subsequently struck the FCC's attempt to correct their

2

interpretation of "impair" and held that the FCC must differentiate between cost disparities for entrants into *any* market and the telecommunications market. *Id*. at 426-27.

The FCC then issued a Review Order that held that CLECs were impaired without unbundled access to ILEC switches for the mass market, but delegated to each state the authority to make more nuanced impairment determinations. *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 564 (D.C. Cir. 2004) ("*USTA II*").

The D.C. Circuit in *USTA II* vacated the FCC rule allowing states to conduct impairment analyses as well as the Commission's national finding of impairment for mass market switching. The court found that the ultimate authority to determine impairment lies with the FCC and, thus, delegation to the states was improper. Further, the court held the Commission's national finding of impairment was improper because it was impermissibly broad. *Id*. at 569-72.

Subsequently, the FCC issued the Order on Remand, the Order at issue in this case, which held that CLECs "are not impaired in the deployment of switches" and that "the disincentives to investment posed by the availability of unbundled switching, in combination with unbundled loops and shared transport, justify a nationwide bar on such unbundling." Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, WC Docket No. 04-313, CC Docket

No. 01-338, FCC 04-290, at ¶ 112 (FCC Feb. 4, 2005) ("Order on Remand").

The Order on Remand stated that "[g]iven the need for prompt action, the requirements ... shall take effect on March 11, 2005." *Id*. at ¶ 134.  The Order discussed a transition plan for "embedded" or existing customers, wherein CLECs must submit orders to convert to alternative service arrangements in which time the parties would modify their interconnection agreements.  The time period set for the transition was twelve months.  *Id*. at ¶¶ 128-29.

Prior to the Order on Remand, BellSouth filed a petition with the Kentucky Public Service Commission ("PSC") to establish a generic docket, asking it to decide whether interconnection agreements pursuant to §§ 251 and 252 of the Act were deemed amended on the effective date of the FCC Unbundling Rules, to the extent the rates in the agreements conflicted with rates in the FCC Order.

As soon as the Order on Remand was issued and prior to resolution of the generic petition it filed with the PSC, BellSouth notified CLECs that as of March 11, 2005, it would no longer accept *new* switching orders to those facilities that were not required by the FCC order.  Cinergy, one of the defendants in this case, filed a motion for emergency relief to the PSC, requesting that the Commission order BellSouth to continue accepting and processing their orders, including *new* orders pursuant to the change of law

4

provisions in their agreement.  Various other CLECs also asked for the same relief.

On March 10, 2005, the PSC issued two orders granting the relief the CLECs requested.  Order, *In re Petition of BellSouth Telecommunications, Inc. to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting from Changes of Law*, Docket No. 2004-00427 (Ky. PSC Mar. 10, 2005); Order, *In re Joint Petition of NewSouth Communications Corp., et al.*, Docket No. 2004-00044 (Ky. PSC Mar. 10, 2005).  The PSC found that the change of law provisions in the interconnection agreements controlled and must be followed in order to modify the agreements to reflect changes implemented by the Order on Remand.  The PSC rejected BellSouth's position that the Order on Remand was immediately effective on March 11, 2005, for new orders.

BellSouth then filed a complaint in this Court against the PSC and various CLECs seeking declaratory and injunctive relief from the two PSC orders for switching, loops, and transports.  BellSouth simultaneously filed an emergency motion for preliminary injunction seeking relief from the PSC orders in so far as the orders refer to switching.[1]

## II. Applicable Law

In order to determine whether a preliminary injunction should

---

[1] Because the motion for a preliminary injunction does not seek relief as to loops or transports, the injunction is inapplicable to the defendant US LEC of Tennessee, Inc.

be granted, the Court considers the following factors:

> (1) whether the movant has a "strong" likelihood of
> success on the merits; (2) whether the movant would
> otherwise suffer irreparable injury; (3) whether issuance
> of a preliminary injunction would cause substantial harm
> to others; and (4) whether the public interest would be
> served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The

factors are not prerequisites to entry of a preliminary injunction,

but instead should be balanced against each other. *Id.*; *United*

*States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

The party seeking a preliminary injunction has the burden of

persuasion to show that the factors weigh in favor of the Court

granting the motion. *Leary*, 228 F.3d at 739. While the Court

balances the factors, the plaintiff must prove irreparable harm in

order to obtain an injunction. *ExtraCorporeal Alliance, LLC v.*

*Rosteck*, 285 F. Supp. 2d 1028, 1040 (N.D. Ohio 2003).

**A. Strong Likelihood of Success on the Merits**

Whether BellSouth has a strong likelihood of success on the

merits is dependent on whether the FCC's Order on Remand is self-

effectuating for new orders or whether it should be effectuated

through the change of law process in the defendants'

interconnection agreements. BellSouth asserts the former, while

the defendants assert the latter.

After a thorough review of the language in the Order on

Remand, the Court finds that BellSouth has a strong likelihood of

success on the merits. For example, the Executive Summary in the

6

Order on Remand states that:

> Incumbent LECs have *no obligation* to provide competitive
> LECs with unbundling access to mass market local
> switching. We adopt a 12-month plan for competing
> carriers to transition away from use of unbundling mass
> market local circuit switching. This transition plan
> applies only to the embedded customer base, and *does not*
> *permit competitive LECs to add new switching UNEs*.

Order on Remand at ¶ 5 (emphasis added). The Order on Remand also
states that the Commission "impose[s] no section 251 unbundling
requirement for mass market local circuit switching nationwide."
*Id*. at ¶ 199. Concerning the effective date, the Order on Remand
states that "[g]iven the need for prompt action, the requirements
set forth here shall take effect on March 11, 2005, rather than 30
days after publication in the Federal Register." *Id.* at ¶ 235.
The strong language in the Order on Remand that ILECs no longer
have an obligation to provide UNE-P switching and the corresponding
effective date of March 11, 2005, will likely lead the Court to
conclude that Order on Remand is self-effectuating for new orders.

Further, the Order reiterates that the "transition period
shall apply only to the embedded customer base, and does not permit
competitive LECs to add new UNE-P arrangements using unbundling
access to local circuit switching pursuant to section 251(c)(3)
except as otherwise specified in this Order." *Id*. at ¶ 227.
During the transition period, ILECs are paid a higher rate for
existing orders than that paid prior to the Order on Remand. *Id.*
at ¶ 228. If the defendants' interpretation is accepted, then

7

BellSouth would be paid less for servicing *new* orders than *existing* orders.  Also, the transition plan sets a specific time period within which the interconnection agreements shall be changed in order to effectuate the Order on Remand.  If the defendants' position is accepted, it is possible that BellSouth would be processing *new* orders longer than it is required to accept *existing* orders at the lower prices mandated by the interconnection agreements.

The defendants point to paragraph 233 which provides:

> We expect that incumbent LECs and competing carriers will implement the Commission's findings as directed by section 252 of the Act.  Thus, carriers must implement changes to their interconnection agreements *consistent with our conclusions in this Order*.  We note that the failure of an incumbent LEC or a competitive LEC to negotiate in good faith under section 251(c)(1) of the Act and our implementing rules may subject that party to enforcement action.  Thus, the incumbent LEC and competitive LEC must negotiate in good faith regarding any rates, terms, and conditions necessary to implement our rule changes.  We expect that parties to the negotiating process will not unreasonably delay implementation of the conclusions adopted in this Order.  We encourage the state commissions to monitor this area closely to ensure that parties do not engage in necessary delay.

Order on Remand at ¶ 233 (emphasis added).  The defendants argue that the language in this paragraph should be read to mean that the transition plan applies to existing orders and that new orders should be effected pursuant to the parties' interconnection agreements, focusing on the sentence "carriers must implement changes to their interconnection agreements consistent with our

8

conclusions in this Order." *Id.*

This paragraph, however, should be read in the context of the entire Order on Remand and not in isolation. BellSouth is likely to succeed in arguing that the language "carriers must implement changes to their interconnection agreements *consistent with our conclusions in this Order*" simply refers to existing customers that, pursuant to the transition plan, must be effectuated through the change of law processes in the interconnection agreements. The paragraph should also be read together with the mandate that the transition plan shall only apply to existing orders and that the Order on Remand shall be effective March 11, 2005, "[g]iven the need for prompt action." *Id.* at ¶ 235.

The defendants also argue that paragraph 227's statement that the transition plan does not permit "new UNE-P arrangements using unbundling access to local circuit switching pursuant to section 251(c)(3) *except as otherwise specified in this Order*" refers to paragraph 233's mandate that interconnection agreements be used to effectuate the process. The more reasoned analysis, however, is that paragraph 227 refers to paragraph 228 that states "the transition mechanism adopted here is simply a default process, and pursuant to section 252(a)(1), carriers remain free to negotiate alternative arrangements superseding this transition period." *Id.* at ¶ 228. Thus, paragraph 227 is interpreted to mean that parties are free to negotiate a longer or shorter transition period.

The Court is not alone in its analysis of BellSouth's likelihood of success; two of the four district courts that have dealt with this issue have ruled similarly. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, LLC, No. 1:05-CV-0674, at 1-6 (N.D. Ga. April 5, 2005) (granting injunction to BellSouth); *BellSouth Telecomms., Inc. v. Miss. Pub. Serv. Comm'n,* No. 3:05-CV-173, at 6-11 (S.D. Miss. April 13, 2005) ("*Miss. PSC*") (granting injunction to BellSouth); *contra MCIMetro Access Transmission Servs., LLC v. Mich. Bell Tel. Co.*, No. 05-CV-709885 (E.D. Mich. Mar. 11, 2005) (order without opinion that grants an injunction to CLECs, but is later withdrawn due to parties' settlement); *Ill. Bell Tel. Co. v. Hurley*, No. 05-C-1149, at 7-12 (E.D. Ill. Mar. 29, 2005). Further, a clear majority of state commissions have agreed that the Order on Remand is self-effectuating for new orders.[2]

---

[2] For instance, Indiana, New York, Ohio, California, New Jersey, Texas, Rhode Island, Kansas, Massachusetts, Michigan, and Maine all are in accord with BellSouth's interpretation of the Order on Remand. See *Miss. PSC*, No. 3:05-CV-173, at 8-9 n.6, for commission orders cited therein. Delaware, North Carolina, and Florida also have held that the Order on Remand is self-effectuating for new orders. *See* Open Meeting, *Complaint of A.R.C. Networks, Inc., d/b/a/ InfoHighway Communications, and XO Communications, Inc., Against Verizon Delaware Inc., for Emergency Declaratory Relief Related to the Continued Provision of Certain Unbundled Network Elements After the Effective Date of the Order on Remand (FCC 04-290 2005)*, Docket No. 334-05 (Del. PSC Mar. 22, 2005); Notice of Decision and Order, *In the Matter of Complaints Against BellSouth Telecommunications, Inc. Regarding Implementation of the Triennial Review Remand Order*, Docket No. P-55, Sub-1550, at 4-5 (N.C. PSC Apr. 15, 2005); Vote Sheet, *Petition to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting From Changes in Law, by BellSouth Telecommunications, Inc.*, Docket No. 041269-TP, at Issue 2 (Fla. PSC Apr. 5, 2005).

The defendants assert that even if the Order on Remand is read to conclude that new orders are not permitted, the FCC is without authority to abrogate interconnection agreements.  This is a collateral attack that is not appropriately before the Court and should instead be brought as a direct appeal of the FCC's Order. *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984); *Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n*, 394 F.3d 568, 569 (8th Cir. 2004).

Even if this is not a collateral attack on the FCC's Order, the FCC had authority to mandate that the Order on Remand would be self-effectuating for new orders because the FCC has been given the authority to implement the Act.  *Iowa Utils. Bd.*, 525 U.S. at 385. Thus, "[t]o the extent a state commission's judgment concerning the interpretation of an approved agreement conflicts with the FCC's interpretation of the FCC regulations, the FCC's interpretation

Commissions that agree with the Kentucky PSC are Tennessee, Louisiana, Illinois, Alabama, and South Carolina.  *See* Transcript of Proceedings, *In re BellSouth's Petition to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting from Changes of Law*, Docket No. 04-00381 (Tenn. PSC Apr. 11, 2005); Letter, *Staff's Recommendation Regarding MCI's Motion for Emergency Relief*, Docket No. 28131 (La. PSC 2005); *Illinois Bell Telephone Co. v. Hurley*, Docket No. 05-C-1149, at 7-12 (N.D. Ill. Mar. 29, 2005); Order, *Temporary Standstill Order and Order Scheduling Oral Argument*, Docket No. 29393 (Ala. PSC Mar. 9, 2005); *Commission Directive, Petition of BellSouth Telecommunications, Inc. to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting from Changes of Law*, Docket No. 2004-316-C (S.C. PSC Apr. 13, 2005) (merely establishing ninety day period within which ILECs must continue to accept new orders from CLECs).

controls under the Supremacy Clause." *Miss. PSC*, No. 3:05-CV-173, at 15 (citing *MCI Telecommuns. Corp. v. Bell Atl.-Penn. Serv.*, 271 F.3d 491, 516 (3d Cir. 2001)).  Further, the FCC was merely undoing the effect of its prior repudiated rules that were negotiated into the regulated interconnection agreements.[3]  *Id.* at 13-14.

While the defendants also argue that the Act places independent obligations for ILECs to provide unbundling services pursuant to § 271, this Court is not the proper forum to address this issue in the first instance.  The enforcement authority for § 271 unbundling duties lies with the FCC and must be challenged there first.  *Miss. PSC*, No. 3:05-CV-173, at 17.

Lastly, the NewSouth joint defendants argue that they are not subject to the preliminary injunction because an Abeyance Agreement and subsequent Abeyance Order was entered by the PSC that specifically states that the joint defendants and BellSouth agree

---

[3] The defendants argue that the only way the FCC may abrogate contracts is through the *Mobile-Sierra* doctrine, which has not been followed because the FCC did not make a particularized finding that abrogating the contracts was in the public interest.  However, the Court is likely to find that due to the fact that the interconnection agreements are not privately negotiated contracts, the *Mobile-Sierra* doctrine is not applicable.  *See e.g., Atl. City Elec. Co. v. FERC,* 295 F.3d 1, 14 (D.C. Cir. 2002) (The *Mobile-Sierra* doctrine provides authority to federal agencies to abrogate "freely negotiated private contracts" provided the agency makes "a particularized finding that the public interest required the modification" of the contracts.).  *See also e.spire Communications, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1207 (10th Cir. 2004) (holding that interconnection agreements are not private contracts but, instead, arise from ongoing federal and state regulations).

12

that their prior interconnection agreements would be in place until the change of law resulting from the *USTA II* progeny was incorporated into new agreements.  As the two district courts dealing with the exact issue have held, this Court does not have to reach whether the Abeyance Agreement and Order authorizes new orders to be placed because this very issue is before the PSC. Thus, our decision on the preliminary injunction "does not affect the PSC's authority to resolve it."  *MCIMetro, No. 1:05-CV-0674, at 6; Miss.* PSC, No. 3:05-CV-173, at 17-18 n.11.

**B. Balancing the Harms**

In deciding whether a preliminary injunction is appropriate, the Court must balance the harm to the plaintiff if the injunction is denied and the harm to the defendants if the injunction is granted.  *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001).  The harm to the plaintiff must be irreparable; it is not sufficient if the plaintiff merely shows that it will suffer economic damages in the absence of an injunction.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  An injunction is inappropriate, thus, if the plaintiff will suffer purely economic harm that is compensable through monetary damages.  "[A]n exception exists where the potential economic loss is so great as to threaten the existence of the movant's business."  *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995).

13

### 1.   Harm to BellSouth

The defendants argue that BellSouth has only asserted damages that are fully compensable with a monetary award.  The defendants assert that the damages are readily calculable by comparing the higher rate BellSouth would be able to charge CLECs for new UNE-P switching orders versus the lower rate BellSouth is required to charge pursuant to the interconnection agreements.

The defendants' argument misses the mark because the plaintiff does not merely assert monetary damages.  It is true that BellSouth alleges damages flowing from the difference in price between the lower price mandated by the interconnection agreements and the higher price the company could charge if the bar on unbundling was immediately lifted.  These damages alone would not be sufficient to warrant an injunction because they are readily calculable.

BellSouth, however, also alleges damages resulting from an inability to compete with the CLECs who can offer services at a lower rate than BellSouth because of the low cost of switching.  As a result, BellSouth asserts that it will lose customers and goodwill if an injunction is not granted.  BellSouth submitted proof that it would lose approximately 943 customers a week without an injunction.  The defendants did not controvert this proof, but assert that the damages flowing from loss of customers are monetary.

The Court agrees with BellSouth that the damages flowing from

14

loss of customers is irreparable because it is impossible to predict the probable length of the lost customers' relationships with BellSouth or whether the customers would return to BellSouth after a decision on the merits in BellSouth's favor. *Basicomputer*, 973 F.2d at 512 (holding that "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute"); *Mich. Bell Tel. Co.*, 257 F.3d at 599 (noting that "loss of established goodwill may irreparably harm a company"); *Lexington-Faytte Urban County Gov't v. BellSouth Telecomms., Inc.*, No. 00-5408, 2001 WL 873629, at *3 (6th Cir. July 26, 2001) (holding that the lower court did not abuse discretion in finding that BellSouth suffered irreparable harm through loss of customers because of a delayed entry into the marketplace) (unpub.); *Ferro v. Ass'd Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (finding that the movant established irreparable injury through loss of customers and good will).

The defendants cite *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 103 (6th Cir. 1991), that upheld a finding of a lack of irreparable harm through loss of customers.  In *Southern Milk*, an agricultural cooperative brought suit to enjoin a competitor from interfering with cooperative agreements that provided the plaintiff with the exclusive rights to act as the sole agent for dairy farmers in Michigan.  The Sixth Circuit held that there was no irreparable harm because the market was not limited and it was

15

unclear whether an injunction would prevent customers from taking their business elsewhere. *Id.*

*Southern Milk* is contrary to later Sixth Circuit cases, cited by the Court above, that hold that irreparable harm may be found from loss of customers and goodwill and fail to mention a "limited market" exception. In two cases in particular, the movants were telecommunications companies and the Sixth Circuit upheld the lower courts' finding of irreparable harm due to loss of customers and goodwill without mentioning whether the market was limited. *Mich. Bell Tel. Co.*, 257 F.3d at 599; *Lexington-Fayette Urban County Gov't*, 2001 WL 873629, at *3. Because the cases conflict, the Court follows the later cited cases that uphold findings of irreparable harm from loss of customers and goodwill where a telecommunication company is concerned.

### 2. Harm to CLECs

The CLECs maintain that if an injunction is entered, they will suffer harm that far outweighs any harm suffered by BellSouth if the motion is denied. Specifically, the CLECs state that granting the injunction will upset the status quo instead of maintaining it; will deny the CLECs meaningful opportunities to negotiate the interpretation of the Order on Remand; would cause the CLECs to lose customers and goodwill from the inability to receive UNE-P services at a lower rate; and would result in customers being immediately be cut off from ordering new services.

16

BellSouth argues that the CLECs' only harm is the harm resulting from not being able to receive unbundling services for new orders at the lower rate mandated by the interconnection agreements. This harm, BellSouth argues, should not be balanced because requiring ILCEs to provide unbundling services to CLECs at a lower cost is contrary to the federal public policy of barring unbundling because it is anti-competitive. Additionally, BellSouth argues that the status quo was established by the Order on Remand and upset by the PSC orders.

The Court agrees with the plaintiff. The Order on Remand establishes the federal policy of not requiring unbundling of switches for new orders. The CLECs' interest in a practice the FCC has stated is "anti-competitive" has very little weight, if any, in balancing the harms. *Graphic Communications Union, Local No. 2 v. Chicago Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985) (Analyzing the defendants' motion for a stay of the district court's order compelling arbitration, the Seventh Circuit held that a stay would be improper because it would be contrary to "strong federal policy in favor of arbitrating disputes.").

Finally, the "status quo" will not be disrupted because the CLECs were on notice that no new UNE-P orders for switching may be accepted because the Interim Order stated that the "transition period shall apply only to the embedded customer base, and does not permit competitive LECs to add new customers at these rates."

17

Order and Notice of Proposed Rulemaking, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 19 FCC Rcd 16783, at ¶ 29 (FCC Aug. 20, 2004).  The Order on Remand also stated that the Order was effective immediately on March 11, 2005.  Order on Remand at ¶ 235.  Thus, while the CLECs are correct in arguing that the status quo established by the PSC orders will be disrupted by an injunction, the status quo established by the Order on Remand is maintained by an injunction.

**C. Public Interest**

BellSouth argues that the public interest is furthered by an injunction because it favors facilities-based competition, the ultimate goal of the Act.  The defendants, on the other hand, argue that the public interest favors denying an injunction because the public may lose access to new services provided through CLECs.  The defendants also state that the public interest in stability of contracts and in competition would be harmed.  Additionally, the defendants argue that the public interest in an orderly transition and the PSC's ability to interpret interconnection agreements would be harmed by an injunction.

While entering an injunction may cause some disruption in service to CLEC customers, the FCC has stated the federal policy of encouraging facilities-based competition is disparaged by mandating unbundling services to CLECs.  As such, the public interest favors

18

entry of a preliminary injunction that reflects that policy. Further, an injunction does no more harm to the PSC's ability to interpret federal telecommunications law or interconnection agreements, than do the processing of appeals for PSC orders authorized by the Act.

### III. Conclusion

Based on the foregoing, the Court finds that all four factors weigh in favor of granting an injunction.

Accordingly, **IT IS ORDERED**:

(1) That Plaintiff's motion for preliminary injunction [Record No. 2] be, and the same hereby is, **GRANTED**; and

(2) That the defendants be, and the same hereby are, **ENJOINED** from enforcing the portion of the PSC orders dated March 10, 2005, that require BellSouth to continue to process new orders for UNE-P switching.

This the 22nd day of April, 2005.



Signed By:

_Joseph M. Hood_

United States District Judge

19