UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

BELLSOUTH   TELECOMMUNICATIONS,)
INC.,                          )
                               )
    Plaintiff,                 )   Civil Action No. 3:05-CV-16-JMH
                               )
v.                             )
                               )
CINERGY COMMUNICATIONS CO.,    )   **MEMORANDUM OPINION AND ORDER**
a/k/a CINERGY COMMUNICATIONS,  )
CORP., ET AL.                  )
                               )
    Defendants.                )
                               )

\*\*     \*\*     \*\*     \*\*     \*\*

In   this   action,   BellSouth   Telecommunications,   Inc.
("BellSouth") seeks review of the following two Kentucky Public
Service Commission ("PSC") orders: (1) Order, *Petition of BellSouth
Telecomms., Inc. to Establish Generic Docket to Consider Amendments
to Interconnection Agreements Resulting from Changes of Law*, Case
No. 2004-00427 (Ky. PSC Mar. 10, 2005) ("Cinergy Order"); and (2)
Order, *Joint Petition for Arbitration of NewSouth Commc'ns Corp.,
et al.*, Case No. 2004-00044 (Ky. PSC Mar. 10, 2005) ("Joint CLEC
Order").  The parties having fully briefed the issue, the matter is
now ripe for review.

I.    **Factual and Procedural Background**

With the passage of the 1996 Telecommunications Act ("the
Act") Congress sought to promote competition among

1

telecommunications providers in an effort to improve the price and quality of service to consumers. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, LLC, 425 F.3d 964, 966 (11th Cir. 2005). One provision of the Act places a duty on incumbent local exchange carriers ("ILECs or incumbent LECs"), like the plaintiff BellSouth, that have traditionally provided local telephone services to an area, to lease unbundled network elements ("UNEs") on a cost basis to new entrants into the market, called competitive local exchange carriers ("CLECs or competitive LECs"). 47 U.S.C. § 251(c)(3); *Id.* § 252(d)(1). The agency delegated to implement the regulatory scheme is the Federal Communications Commission ("FCC").

The Act authorizes the FCC determine the network elements and the proper candidates for this low rate of service. A "network element" is defined as "a facility or equipment used in the provision of a telecommunications services." *Id.* § 153(29). The unbundled network elements platform ("UNE-P") is composed of switching functions, shared transport, and loops. Plaintiff's complaint defines "switches" as "the facilities that route and connect calls." (Pl.'s Compl. ¶ 3.) "Loops are the wire and fiber facilities strung on telephone poles or buried underground that connect the individual customer locations to the network. Transport refers to cables that connect the BellSouth facilities that house switches." (*Id.* n.2.)

2

When considering whether particular network elements ought to be unbundled, the Act provides that the FCC must consider "at a minimum, whether . . . access to such network elements as are proprietary in nature is necessary; and . . . [whether] the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer."  47 U.S.C. § 251(d)(2).

The Act also mandates that ILECs and CLECs enter into interconnection agreements that are overseen by the FCC and state commissions.  Because the nature of the industry is ever changing, the agreements most often contain "change of law" provisions that provide mechanisms for the parties to renegotiate the effect particular changes of law have on the agreements.  *Id*. § 252(a), (b).

In the late 1990s, the FCC interpreted the Act's impairment test broadly and imposed blanket unbundling requirements on ILECs.  These requirements were stricken by the Supreme Court and lower federal courts as being contrary to the purposes of the Act.[1]  Most

---

[1] For example, in *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999), the Supreme Court held that the FCC had not properly considered whether unbundling was necessary or whether the CLECs were impaired.  *Id.* at 388-92.  In *United States Telecom Association v. FCC*, 290 F.3d 415, 419 (D.C. Cir. 2002) ("*USTA I*"), the D.C. Circuit held that the FCC's interpretation of impairment was too broad because it did not differentiate between cost disparities for entrants into *any* market and the telecommunications market.  *Id.* at 426-27.

3

recently, the D.C. Circuit vacated the FCC's rule that found CLECs were "nationally impaired" without unbundled access to switches and that more nuanced impairment determinations were delegated to state commissions.  The D.C. Circuit held that the ultimate authority to determine impairment lies with the FCC, not state commissions.  The court also held the FCC's finding of national impairment was improper because it was impermissibly broad.  *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 569-72. (D.C. Cir. 2004) ("*USTA II*").

In response to that decision, the FCC issued the Interim Rules Order that provided for a period wherein unbundling requirements would remain in tact at the same rates and terms, but warned, "These interim requirements will only remain in place for six months after Federal Register publication of this Order, by which time we intend to issue permanent rules."  Order and Notice of Proposed Rulemaking, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 19 FCC Rcd 16783 ¶ 21 (2004) ("Interim Order").  The Interim Order also created a transition period that would take effect after the enactment of the permanent rules wherein ILECs would continue to provide UNE services at a rate moderately higher than the previous cost-based rate.  *Id*. ¶ 1.  The Interim Order provided, however, that "this transition period shall apply only to the embedded customer base, and does not permit competitive LECs to add new customers at these rates."  *Id*. ¶ 29.

4

Subsequently, the FCC issued the Order on Remand, the Order at issue in this case, that attempted to effectuate the purposes of the Act; promotion of facilities-based competition and increase in quality and pricing for consumers. Having found that previous broad interpretations of "impairment" actually decreased incentive for CLECs to build their own facilities, the Order on Remand found impairment "only where unbundling does not frustrate sustainable, facilities-based competition." Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 2005 WL 289015, 20 FCC Rcd. 2533, at ¶¶ 2-3 (FCC Feb. 4, 2005) ("Order on Remand"). In keeping with this purpose, the Order on Remand held that CLECs "are not impaired in the deployment of switches" and that "the disincentives to investment posed by the availability of unbundled switching, in combination with unbundled loops and shared transport, justify a nationwide bar on such unbundling." *Id*. ¶ 112.

The Order on Remand provided that "[g]iven the need for prompt action, the requirements . . . shall take effect on March 11, 2005." *Id*. at ¶ 134. The Order on Remand created a transition plan for "embedded" or existing customers, wherein CLECs had to submit orders to convert to alternative service arrangements for switching in which time the parties would modify their interconnection agreements. The time period for the transition was

extended to twelve months, as opposed to the six months forewarned in the Interim Order.  *Id*. at ¶¶ 128-29.

Instead of a whole-scale ban on unbundling for loops and transport, the Order on Remand provided more limited relief.  The Order set out specific circumstances where loops and transport were still impaired and, thus, unbundling was still required.  The transition plans for loops and transport used almost identical language to that used for switching and provided that the plans only apply to the "embedded customer base" and "do not permit competitive LECs to add new dedicated transport UNEs [and new high-capacity loop UNEs]."  *Id*. ¶¶ 199, 142.

As soon as the Order on Remand was issued, BellSouth notified CLECs that as of March 11, 2005, it would no longer accept *new* switching orders to those facilities that were not required by the FCC's order.  Cinergy Communications Corp. ("Cinergy"), one of the defendants in this case, filed a motion for emergency relief to the PSC, requesting that the PSC order BellSouth to continue accepting and processing its orders, including *new* orders, pursuant to the change of law provisions in the parties' agreement.  Various other CLECs also asked for the same relief.

On March 10, 2005, the PSC issued two almost identical orders granting the relief the CLECs requested.  (Cinergy Order); (Joint CLEC Order).  In the orders, the PSC rejected BellSouth's position that the Order on Remand was immediately effective on March 11,

6

2005 for new orders and, instead, found that the ban on unbundling caused "a change in law within the meaning of the existing effective contract terms between BellSouth and these CLECs carriers. . . . Because these contracts are in effect, BellSouth must follow the contract language to change its interconnection agreements." (Cinergy Order at 3.)  Based on this finding, the PSC ordered BellSouth to "follow its contractual obligation to negotiate the changes of law on its interconnection agreements regarding the discontinuation of unbundled network elements." (*Id.*)

Thereafter, BellSouth filed a complaint in this Court against the PSC and various CLECs seeking declaratory and injunctive relief from the two PSC orders for switching, loops, and transports. BellSouth simultaneously filed an emergency motion for a preliminary injunction seeking relief from the PSC orders only as the orders referred to switching.

On April 22, 2005, after a hearing and extensive briefing on the matter, the Court granted BellSouth's motion for a preliminary injunction enjoining enforcement of the two PSC orders as they related to switching.  The Court found that based on the language of the Order on Remand, it was likely that BellSouth would succeed on the merits because the Order on Remand's ban on unbundling for new orders was effective March 11, 2005 and did not require the change to be effected through the change of law provisions in the

interconnection agreements.   The Court also found that the remaining factors for a preliminary injunction were present and weighed in favor of entry of a preliminary injunction.[2]

Currently before the Court is BellSouth's motion for summary judgment.   BellSouth seeks a permanent injunction against the PSC orders, declaratory relief, and damages.   Although the preliminary injunction only involved switching, BellSouth's complaint and motion for summary judgment also assert that the two PSC orders conflict with the Order on Remand as the orders relate to loops and transport.

## II.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2] After the Court issued the April 22, 2005 Memorandum Opinion granting a preliminary injunction to BellSouth, one of the defendants, Cinergy, moved to clarify.  Cinergy asked the Court to clarify that when the opinion used the terms "new orders" and "new customers" it only referred to new orders from new customers.  In response, BellSouth argued that the Court meant new orders from existing customers as well as new orders from new customers.  On June 3, 2005, the Court clarified its Opinion and held that "new customers" or "new orders" meant those customers or orders not included in the transition plan.  The Court refused to decide whether new orders from existing customers was included in the transition plan because this issue had not been decided by the PSC.

Similarly here, the Court is merely deciding whether BellSouth was forced to effectuate the ban on unbundling through the change of law provisions in the interconnection agreements or whether BellSouth could immediately cease taking orders from those customers not included in the transition plan.  For ease of understanding, the Court will refer to those customers not in the transition plan as "new orders."

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The evidence is construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

Bell South contends that the two PSC orders are pre-empted by the Act. Accordingly, the Court reviews *de novo* the PSC orders' compliance with interpretation of the Act. *Verizon v. Strand*, 367 F.3d 577, 581 (6th Cir. 2004). "If no illegality is uncovered during such a review, the question of whether the state commission correctly interpreted the challenged interconnection agreement must then be analyzed, but under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative

bodies' assessments of state law principles." *Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 433 (6th Cir. 2003) ("*MFS Intelenet*").

**III.    Analysis**

**A.   Preliminary Matters**

Before the Court discusses the merits of the case, the Court must address two preliminary arguments of the defendants.  The PSC argues that the case is moot and SouthEast argues that BellSouth is barred by res judicata from requesting the relief it seeks against SouthEast.

**(1). Mootness**

The PSC argues that the matter is moot because the CLECs were forced to make alternate agreements with BellSouth concerning new orders following entry of the preliminary injunction.  The PSC asserts that if the Court were to deny permanent injunctive relief "and allow the PSC's orders to take effect, the result would be the same as if the orders were permanently enjoined - because the CLECs have already made alternative arrangements with BellSouth, an extended negotiation period would be pointless."  (PSC's Resp. to Pl.'s Mot. for Summ. J. 4.)

Article III vests this Court with jurisdiction over "cases and controversies".  "Under the 'case or controversy' requirement, this [C]ourt has no authority to issue a decision which would not affect the rights of the litigants." *Sw. Williamson County Cmty. Ass'n,*

10

*Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001). A matter is not moot if "'the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Id.* (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). The burden rests with the party claiming mootness, in this case, the PSC. *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004).

The Court finds that the matter is not moot because "'the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Id.* If the Court finds for BellSouth, the legal interest of the parties would change because the preliminary injunction entered by the Court only enjoined the PSC orders as they related to switching and did not enjoin the orders as they related to loops and transport and did not make any findings as to BellSouth's damages. Further, the PSC did not submit evidence that *all* of the CLECs have reached agreements with BellSouth regarding future pricing of new orders for switching, loops, and transport. Therefore, the PSC has not met its burden in proving the matter is moot.

**(2). Res Judicata**

SouthEast argues that BellSouth's attempt to obtain a permanent injunction enjoining the two PSC orders is precluded by the Court's previous decision in *BellSouth Telecommunications, Inc. v. SouthEast Telephone, Inc.*, No. 3:04-CV-84-JMH (E.D. Ky. Sept.

11

16, 2005) ("*SouthEast Tel., Inc.*"), in violation of res judicata principles. SouthEast argues that the prior case "involved the issues that are presented here - specifically, whether BellSouth may unilaterally cease to comply with the terms of its preexisting interconnection agreement, or whether it must continue complying with that agreement pending resolution of its disputes with SouthEast." (SouthEast's Resp. to Pl.'s Mot. for Summ. J. 10.) SouthEast maintains that the parties have already litigated this issue and, thus, BellSouth is foreclosed from seeking an injunction that would enable BellSouth to cease carrying on its obligations under their agreement.

Res judicata involves two principles of law more aptly called claim preclusion and issue preclusion. *Mitchell v. Chapman*, 343 F.3d 811, 819 n.5 (6th Cir. 2003). Claim preclusion "refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action[,]" whereas issue preclusion "refers to the foreclosure of an issue previously litigated." *Id.* Claim preclusion is present only:

> (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity exists between the prior and present actions.

*Id.* at 819; *accord Browning v. Levy,* 283 F.3d 761, 771 (6th Cir.

2002).  The fourth element requires "identity of the facts creating the right of action and of the evidence necessary to sustain each action."  *Mitchell*, 343 F.3d at 819 n.6.

Issue preclusion, on the other hand, is present if the following elements are met:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908 (6th Cir. 2001) (quoting *Young*).  Neither claim or issue preclusion precludes BellSouth's current suit against SouthEast because the two cases involve different section of the Act, different orders from the PSC, and different mandates from the FCC concerning different factual situations.

For instance, in the prior suit, *SouthEast Tel., Inc.*, BellSouth appealed a PSC order holding that the FCC's new rule interpreting § 252(i)'s opt-in procedure was not applicable to determine whether SouthEast could adopt a portion of BellSouth's agreement with another CLEC.  The former rule, called the pick-and-choose rule, permitted CLECs to adopt a portion of an ILEC's

agreement with another CLEC, whereas the new rule, the all-or-nothing rule, provided that a CLEC wishing to adopt a provision of another agreement had to adopt the whole agreement or nothing at all.

SouthEast filed its notice of intent to adopt a portion of BellSouth's agreement with another CLEC prior to the enactment of the new rule, but the PSC's decision utilizing the former rule was after the rule change. BellSouth argued that the new rule should apply and, alternatively, that under the former rule the adoption of a dispute resolution provision was not permitted.

This Court affirmed the PSC's decision to apply the former rule because applying the new rule would have an impermissible retroactive effect and there was no congressional intent for the rule to be applied retroactively. The Court also found that under the former rule, a CLEC could adopt a dispute resolution provision because this provision was a "term" or "condition" under which ILECs made available interconnection, service, or network elements to CLECs.

In this case, on the other hand, the issue is whether the ban on § 251(c)(3) unbundling in the FCC's Order on Remand is effective immediately for new orders or whether the ban for new orders is to be effected through the change of law provisions of the parties' interconnection agreements. There is no "identity of the facts creating the right of action and of the evidence necessary to

14

sustain each action" as is needed for claim preclusion. *Mitchell*, 343 F.3d at 819. On the contrary, the two cases involve different sections of the Act, different mandates from the PSC, and different action from the FCC.

Although SouthEast frames the issue of the former case much broader, the issue in the former case was only which rule to apply to SouthEast's attempt to adopt the dispute resolution provision and whether under the former rule that provision was adoptable. The issue was not "whether BellSouth may unilaterally cease to comply with the terms of its preexisting interconnection agreement, or whether it must continue complying with that agreement pending resolution of its disputes with SouthEast[,]" as SouthEast maintains. Therefore, because there is a lack of identity of facts and the issue before the Court was not "raised and actually litigated in the prior proceeding[,]" *Young*, 824 F.2d at 515, the Court finds that neither claim preclusion or issue preclusion bars the present action.

**B.   Permanent Injunction and Declaratory Relief**

Having found that the matter is not moot or barred by res judicata, the Court proceeds to discuss the merits. BellSouth seeks a permanent injunction enjoining the two PSC orders, a declaration that the orders are pre-empted, and remand to the PSC to determine damages. In determining whether a permanent injunction will be granted, in addition to prevailing on the merits

15

of the claim, the plaintiff must prove: "1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998); *SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841, 852 (E.D. Ky. 2002).  One court has noted,

> This standard differs form the standard used to review motions for preliminary injunctions in only two respects.  First, when a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits.  *See Amoco Prod. Co. v. Village of Gambell*, *AK*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.E.2d 542 (1987).  Second, a court facing a motion for a preliminary injunction must weigh the potential harm to the defendant resulting from an injunction, while a court deciding whether to grant permanent injunctive relief does not do so.

*Eller Media Co. v. City of Cleveland, Ohio*, 161 F. Supp. 2d 796, 807 n.12 (N.D. Ohio 2001).

BellSouth also seeks a declaration that the two PSC orders are pre-empted by the Order on Remand and, thus, are unlawful. Declaratory relief is appropriate if the Court finds that the PSC orders are pre-empted by the Act.  *See WorldCom, Inc. v. Conn. Dep't of Pub. Util. Control*, 375 F. Supp. 2d 86, 99 (D. Conn. 2005) (affirming grant of declaratory and injunctive relief where state commission's order did not comply with the Act).

In granting BellSouth's motion for a preliminary injunction the Court found that BellSouth had a strong likelihood of success

on the merits of its appeal as to switching.  After reviewing the submissions of the parties, the Court finds that entry of a permanent injunction is proper because the two PSC orders are inconsistent with and are pre-empted by the Order on Remand.  The new arguments of the defendants do not persuade the Court to alter its analysis of the Order on Remand.  Further, the Court extends the relief requested to certain loops and transport because the Order on Remand does not necessitate a different result for the specified network elements.  Finally, the Court finds that the remaining elements support granting the permanent relief BellSouth seeks.

**1). Prevailing on the Merits**

First, the Court finds that the two PSC orders are pre-empted as they pertain to switching by the language of the Order on Remand.  For example, the Executive Summary in the Order on Remand states that ILECs "have *no obligation* to provide competitive LECs with unbundling access to mass market local switching" and that the FCC "impose[s] no section 251 unbundling requirement" for switching.   Order on Remand at ¶¶ 5, 199 (emphasis added).  Concerning the effective date, the Order provides, "[g]iven the need for prompt action, the requirements set forth here shall take effect on March 11, 2005, rather than 30 days after publication in the Federal Register."  *Id.* at ¶ 235.

Regarding the transition plan, the Order states that the

17

"transition period shall apply only to the embedded customer base, and *does not permit* competitive LECs to *add new UNE-P arrangements* using unbundling access to local circuit switching pursuant to section 251(c)(3) except as otherwise specified in this Order." *Id*. at ¶ 227 (emphasis added). The language is clear that the Order on Remand "does not permit . . . new UNE-P arrangements" and that only the "embedded customer base" is included in the transition plan.

As the Court found at the preliminary injunction stage, reading the Order on Remand to require ILECs to negotiate the ban on unbundling for orders not included in the transition plan leads to an illogical result because ILECs are paid at a higher rate for switching services for orders included in the "embedded base" than the cost-based amount formerly required and the transition plan only lasts twelve months. *Id*. at ¶ 228. If the defendants' interpretation is accepted, then BellSouth would be paid less for servicing *new* orders than *existing* orders and may be processing *new* orders longer than it is required to accept *existing* orders at the lower prices mandated by the interconnection agreements.[3] This result is illogical and wholly inconsistent with the Order on Remand's ban on unbundling.

---

[3] Although the PSC argues in its response that "[h]ad the PSC's order not been enjoined, the defendants, while negotiating new agreements, would have been placing orders for new UNE-P consistent with the prices of those for the embedded customer base", there is no authority or guaranty offered for this position.

18

The FCC's recent description of the Order on Remand in a declaratory ruling supports the Court finding.  The FCC described the Order on Remand as attempting to avoid disruption by the ordering of "a 12-month transition period to allow competitors to move their *preexisting* UNE-P customers to alternative arrangements."  Memorandum Opinion and Order and Notice of Inquiry, *BellSouth Telecomms., Inc. Request for Declaratory Ruling*, 20 FCC Rcd 6830, ¶ 8 (2005) (emphasis added).  The FCC's statement that the customers involved in the transition plan are "preexisting" supports the Court's finding that the ban on new orders is effected immediately.

The defendants cite paragraph 233 for support, which provides that "carriers must implement changes to their interconnection agreements consistent with our conclusions in this Order."  It also provides that "incumbent LEC and competitive LEC must negotiate in good faith regarding any rates, terms, and conditions necessary to implement our rule changes."  Order on Remand at ¶ 233 (emphasis added).  This paragraph, however, simply refers to effectuating the transition plan through the change of law processes in the interconnection agreements.  The paragraph should be read together with the mandate that the transition plan shall only apply to existing orders and that the Order on Remand shall be effective March 11, 2005, "[g]iven the need for prompt action."  *Id.* at ¶ 235.

The defendants also argue that paragraph 227's statement that the transition plan does not permit "new UNE-P arrangements using unbundling access to local circuit switching pursuant to section 251(c)(3) *except as otherwise specified in this Order*" refers to paragraph 233's mandate that interconnection agreements be used to effectuate the change of law.   The Court finds, however, that paragraph 227 refers to paragraph 228 that states "the transition mechanism adopted here is simply a default process, and pursuant to section 252(a)(1), carriers remain free to negotiate alternative arrangements superseding this transition period."   *Id.* at ¶ 228. Thus, paragraph 227 simply means that parties are free to negotiate a longer or shorter transition period.

The Court is not alone in its analysis of the Order on Remand. Three of the five district courts that have dealt with this issue have ruled similarly.[4]   Further, a clear majority of state commissions have agreed that the Order on Remand is self-

---

[4] *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, No. 1:05-CV-0674, 2005 WL 807062, at *1-6 (N.D. Ga. April 5, 2005) (granting injunction to BellSouth) affirmed by *affirmed by* 425 F.3d 964, 969-71 (11th Cir. 2005); *BellSouth Telecomms., Inc. v. Miss. Pub. Serv. Comm'n*, 368 F. Supp. 2d 557, 560 - 66 (S.D. Miss. 2005) (granting injunction to BellSouth); *contra MCIMetro Access Transmission Servs., LLC v. Mich. Bell Tel. Co.*, No. 05-CV-709885 (E.D. Mich. Mar. 11, 2005) ("*Miss. PSC*") (order without opinion that grants an injunction to CLECs, but is later withdrawn due to parties' settlement); *Ill. Bell Tel. Co. v. Hurley*, No. 05-C-1149, at 7-12 (E.D. Ill. Mar. 29, 2005) (denying injunction to BellSouth).

effectuating for new orders.[5]

_____

[5] For instance, Indiana, New York, Ohio, California, New Jersey, Texas, Rhode Island, Kansas, Massachusetts, Michigan, and Maine all are in accord with BellSouth's interpretation of the Order on Remand. *See Miss. PSC*, 368 F. Supp. 2d at 561 n.6, for commission orders cited therein. Delaware, North Carolina, Florida, Louisiana, Alabama, Maryland, Virginia, Tennessee, and Pennsylvania have also held that the Order on Remand is self-effectuating for new orders. *See* Open Meeting, *Complaint of A.R.C. Networks, Inc., d/b/a/ InfoHighway Commc'ns, and XO Commc'ns, Inc., Against Verizon Del. Inc., for Emergency Declaratory Relief Related to the Continued Provision of Certain Unbundled Network Elements After the Effective Date of the Order on Remand (FCC 04-290 2005)*, Docket No. 334-05 (Del. PSC Mar. 22, 2005); Notice of Decision and Order, *In the Matter of Complaints Against BellSouth Telecomms., Inc. Regarding Implementation of the Triennial Review Remand Order*, Docket No. P-55, Sub-1550, at 4-5 (N.C. PSC Apr. 15, 2005); Vote Sheet, *Petition to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting From Changes in Law, by BellSouth Telecomms., Inc.*, Docket No. 041269-TP, at Issue 2 (Fla. PSC Apr. 5, 2005); Minutes of Open Session, Pursuant to Special Order 48, U-28131, at 3-4 (La. PSC Apr. 20, 2005); Order Dissolving Temporary Standstill and Granting in Part and Denying in Part Petitions for Emergency Relief, *Petition of Competitive Carriers of the South, Inc.*, Docket No. 29393, at 14 (Ala. PSC May 25, 2005); Letter, *Emergency Petition of MCI for a Comm'n Order Directing Verizon to Continue to Accept New Unbundled Network Element Platform Orders*, ML No. 96341 (Md. PSC March 10, 2005); Order Dismissing and Denying, Petition of A.R.C. Networks Inc. d/b/a Infohighway Commc'ns, Inc. and XO Communications, Inc. for a Declaratory Ruling Directing Verizon to Continue to Provision Certain UNEs and UNE Combinations, Case No.PUC-2005-00042 (Va. SCC Mar. 24, 2005); Order Terminating Alternative Relief Granted During April 11, 2005 Deliberations, *BellSouth's Petition to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting from Changes of Law*, Docket No. 04-00381 (Tenn. Reg. Auth., July 25, 2005); Agenda, *Pa. PUC v. Verizon Pa. Inc.*, Docket No. R-00049525 (Pa. PUC Mar. 23, 2005).

Commissions that agree with the PSC are Illinois, Mississippi, Georgia, and South Carolina, two of which were found unlawful by the district courts reviewing the PSC orders and one of which only established a ninety day period that the ILEC must accept new orders. *See Ill. Bell Tel. Co. v. Hurley*, Docket No. 05-C-1149, at 7-12 (N.D. Ill. Mar. 29, 2005); Order Establishing Generic Docket, Docket No. 2005-AD-139, (Miss. PSC Mar. 9, 2005), declared unlawful

The same logic applies to BellSouth's motion for relief against the two PSC orders as they refer to loops and transport. As opposed to a complete ban on unbundling for loops and transport, the FCC's Order on Remand creates a three-tier test to determine when unbundling is no longer required for certain wire centers for transport. Order on Remand, ¶ 66. For loops, the Order on Remand also specifies the circumstances wherein unbundling is no longer required. *Id.* ¶ 146. The ban on unbundling for loops and transport is not whole-scale but, instead, is limited to certain circumstances delineated in the Order on Remand. Similar to the ban on unbundling for switching, however, is the creation of transition plans for both loops and transport that only apply to the "embedded customer base" and "do not permit" CLECs "to add new dedicated transport UNEs". *Id.* ¶¶ 142, 195 (accord for loops).

Based on the similarity between the transition plans, the Court finds that the ban on unbundling for those situations where

---

by *BellSouth Telecomms., Inc. v. Miss. Pub. Serv. Comm'n, cited supra*; Order on MCI's Motion for Emergency Relief Concerning UNE-P Orders, *Generic Proceeding to Examine Issues Related to BellSouth's Obligations to Provide Unbundled Network Elements*, Docket No. 19341-U (Ga. PSC Mar. 9, 2005), declared unlawful by *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.,cited supra*; *Commission Directive, Petition of BellSouth Telecomms., Inc. to Establish Generic Docket to Consider Amendments to Interconnection Agreements Resulting from Changes of Law*, Docket No. 2004-316-C (S.C. PSC Apr. 13, 2005) (establishing ninety day period within which ILECs must continue to accept new orders from CLECs).

the FCC found no impairment for loops and transport is effective immediately for new orders.  As BellSouth argues, the transition plans for loops, transport, and switching utilizes almost identical language and only apply to the "embedded base" of customers.  The Court is persuaded that the same logical interpretation of the transition plans apply.  *See BellSouth Telecommcs, Inc.,* 2005 WL 807062, at *4 (granting preliminary injunction for switching, loops and transport), *affirmed by* 425 F.3d 964 (11th Cir. 2005).

NuVox argues that the paragraphs following the transition plans for loops and transport indicate the FCC's intent to effectuate the limited ban on unbundling for loops and transport through the change of law provisions in the parties' agreements.  For support, NuVox cites paragraph 143, which provides that "carriers have twelve months from the effective date of this Order to modify their interconnection agreements, including any change of law processes."  Paragraph 196 uses the same language for loops.  These paragraphs, however, follow the transition plan paragraphs that clearly state that the transition plans apply only to the "embedded customer base" and that the transition plans "do not permit [CLECs] to add new [loops or transport.]"[6]  Order on Remand

---

[6] Nuvox also argues that paragraph 233, which applies to loops, transport, and switching supports its argument.  The Court has already discussed this paragraph in the context of switching. For the same reasons discussed *supra*, Nuvox's argument is ill-fated.

at ¶¶ 195, 142.

The rules promulgated in support of the Order on Remand also clearly state that ILECs may no longer obtain unbundling for those loops and transport that the Order on Remand specifies as being no longer impaired. 47 C.F.R. § 51.319(a)(4)(iii) ("Where incumbent LECs are not required to provide unbundled DS1 loops . . . requesting carriers may not obtain new DS1 loops as unbundled network elements"); *Id*. § 51.319(a)(5)(iii) (same for DS3 loops); *Id*. § 51.319(e)(2)(ii)(C) (same for DS1 transport); *Id*. § 51.319(e)(2)(iii)(C) (same for DS3 transport). Therefore, the PSC orders mandating that BellSouth continue to provide switching, loops, and transport services for new orders to CLECs are pre-empted because they are inconsistent with the Order on Remand.[7]

In finding the PSC orders are pre-empted, the Court rejects Nuvox's argument that the Act preserves the PSC's right to enact unbundling obligations pursuant to § 251(d)(3)(C) because the same section also provides that the Act preempts state regulations, orders, or policies that are *inconsistent*. 47 U.S.C. § 251

---

[7] In holding that the two PSC orders are pre-empted by the Order on Remand, the Court is not making a finding as to whether BellSouth has additional unbundling requirements pursuant to § 271. In the Court's Opinion granting preliminary relief, the Court noted that this Court was not the appropriate forum to address this issue because the FCC was the appropriate forum. This statement was *dictum* and was only addressed because the defendants argued that § 271 prevented the Court's entry of a preliminary injunction. As the Court is merely concluding that the PSC orders are pre-empted by the Order on Remand, the Court makes no finding as to § 271 requirements.

24

(d)(3)(B) ("In prescribing and enforcing regulations to implement the requirements of this section, the Commission shall not preclude the enforcement of any regulation, order, or policy of a State commission that – . . . (B) is consistent with the requirements of this section."); *Id.* § 261(b) (permitting states to enforce existing rules so long as the rules are not inconsistent with the Act); *Id.* § 261(c) (permitting states to enact additional requirements on carriers so long as the additional requirements are not inconsistent with the Act); *Verizon v. Strand,* 309 F.3d 935, 940 (6th Cir. 2002) (analyzing § 261 of the Act and holding that "Congress has clearly stated its intent to supersede state laws that are inconsistent with the provisions of [the Act].").

### 2). Irreparable Injury and Absence of Remedy at Law

Next, the Court finds that the remaining factors support entry of a permanent injunction in favor of BellSouth. In particular, the Court finds that BellSouth would suffer irreparable harm in the absence of a permanent injunction because it is impossible to quantify potential lost customers. Although the CLEC defendants argue that BellSouth has quantified the loss by asking for the difference in price between what the defendants paid, it is impossible to quantify the amount of loss BellSouth would suffer from *customers* who chose the CLEC defendants over BellSouth due to the ability of the CLECs to receive switching, loops, and transport services at a cost basis from BellSouth. Sixth Circuit precedent

supports this Court's finding. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (holding that "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute"); *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) (noting that "loss of established goodwill may irreparably harm a company"); *Lexington-Fayette Urban County Gov't v. BellSouth Telecomms., Inc.*, No. 00-5408, 2001 WL 873629, at *3 (6th Cir. July 26, 2001) (holding that the lower court did not abuse its discretion in finding that BellSouth suffered irreparable harm through loss of customers because of a delayed entry into the marketplace) (unpub.); *Ferro v. Ass'd Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (finding that the movant established irreparable injury through loss of customers and good will).

Finally, an adequate remedy does not exist at law because the PSC Orders are contrary to the express intent of the FCC's Order on Remand's ban on unbundling.  Without an injunction, BellSouth is unprotected against the PSC's unlawful interpretation of federal law.  Therefore, the Court grants BellSouth's motion for a permanent injunction and declaratory relief.

## C. Damages

BellSouth's proposed order also asks the Court to enjoin the PSC to "mandate that all [CLECS] in Kentucky that order [UNE] switching, loops, and/or transport from BellSouth in circumstances

26

not permitted under the . . . Order on Remand" to pay "the difference between the UNE rates for access to such facilities and the lawful rate for access to such facilities (as established by the statutory resale rate)." (Pl.'s Mot. for Summ. J., Proposed Order 1-2.) Southeast objects to the Court determining the rates that the CLECs must pay retroactively because the PSC has recently addressed or has been asked to address this issue. (SouthEast's Resp. to Mot. for Summ. J. 6.)

The Court finds that district courts have the authority to remand matters to the PSC to determine damages, if any, are due to the party aggrieved by the PSC's unlawful orders. *BellSouth Telecomms., Inc. v. Ga. Pub. Serv. Comm'n*, 400 F.3d 1268, 1271-72 (11th Cir. 2005) (holding that the district court was not in error in remanding the case to the PSC to determine the plaintiff's damages flowing from the PSC's unlawful rate determination because a district court has the authority to grant this remedy upon concluding that the state commission's substantive determination was unlawful). Therefore, the Court remands the matter to the PSC to determine the amount of damages, if any, and to whom the damages are due, consistent with this findings of fact and conclusions of law in this Opinion. In remanding to the PSC to determine if BellSouth should be awarded damages, the Court is not ruling on any issues presently before the PSC, for example whether BellSouth has additional unbundling requirements pursuant to § 271 or whether new

27

orders from existing customers are included in the transition plan because the PSC must first rule on these issues before determining the amount of damages.

## IV.    Conclusion

The clear language of the Order on Remand mandates that the ban on unbundling for new orders is effective immediately for switching and certain loops and transport.  The PSC orders are inconsistent with the Order on Remand because they require BellSouth to continue processing new orders and to effect the change through the parties' interconnection agreements.  Because the Order on Remand preempts the PSC orders, the Court grants the relief BellSouth requests.

Accordingly, **IT IS ORDERED**:

(1) Plaintiff's motion for summary judgment [Record No. 155] be, and the same hereby is, **GRANTED.**

(2)  That the defendants be, and the same hereby are, **PERMANENTLY ENJOINED** from enforcing the two PSC orders as the PSC orders pertain to accepting new orders.

(3)  That the 2 PSC orders be, and the same hereby are, **DECLARED PRE-EMPTED** by the FCC's Order on Remand and, thus, are unlawful.

(4) That the matter be, and the same hereby is, **REMANDED** to the PSC to determine damages, if any.

(5) That the matter be, and the same hereby is, **STRICKEN FROM**

28

**THE ACTIVE DOCKET.**

This the 20th day of March, 2006.



Signed By:

*__Joseph M. Hood__*

**United States District Judge**